UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JOSEPH SADLER,                    Case No. 18-11689

          Plaintiff,                     George Caram Steeh
v.                                        United States District Judge

COMMISSIONER OF SOCIAL                    Stephanie Dawkins Davis
SECURITY,                                 United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 13)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On May 30, 2018, plaintiff William Joseph Sadler filed the instant suit.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge George Caram Steeh referred this matter to the undersigned for the purpose

of reviewing the Commissioner's unfavorable decision denying plaintiff's claim

for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 12, 13).

### B.   Administrative Proceedings

Sadler filed a Title II application for a period of disability and disability

insurance benefits on April 15, 2015, alleging disability beginning on January 14,

2014.  (Tr. 10).[1]  The alleged onset date is the day after a prior unfavorable

disability ruling from the Social Security Administration.  (Dkt. 12, at p. 2).   The

claims were initially disapproved by the Commissioner on August 20, 2015.  (Tr.

10).  Plaintiff requested a hearing and on May 11, 2017, he appeared with counsel

before Administrative Law Judge ("ALJ") Kevin W. Fallis, who considered the

case *de novo*.  (Tr. 10-25).  In a decision dated September 29, 2017, the ALJ found

that plaintiff was not disabled.  (Tr. 25).  The ALJ's decision became the final

decision of the Commissioner when the Appeals Council, on March 28, 2018,

denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.      FACTUAL BACKGROUND

### A.      ALJ Findings

Sadler, born June 27, 1961, was 53 years old on the date last insured,

December 31, 2014.  (Tr. 24).  He has past relevant work as an automobile

---

[1] The Administrative Record appears on the docket at entry number 10.  All references to the same are identified as "Tr."

mechanic and a welder.  (Tr. 23).  He claims he cannot work because of carpal tunnel syndrome in both hands, anxiety, abdominal pain and issues, pain in both shoulders, degenerative disc disease and other spine issues, hernia, high blood pressure, and high cholesterol.  (Tr. 212).

The ALJ applied the five-step disability analysis and found at step one that Sadler had not engaged in substantial gainful activity during the period between his alleged onset date of January 14, 2014 through his date last insured.  (Tr. 13).  At step two, the ALJ found that Sadler's degenerative disc disease of the lumbar and cervical spine, right shoulder degenerative joint disease and rotator cuff tear, irritable bowel syndrome, osteoporosis, osteoarthritis, a depressive disorder, "NOS," and cannabis dependence were severe within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 13-14).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows:
>
> The claimant could frequently climb ramps and stairs. The claimant was limited to occasional reaching in any

> direction bilaterally. The claimant's psychological
> symptoms would have interfered with his ability to
> perform complex tasks, but the claimant retained
> the ability to perform semi-skilled tasks on a sustained
> basis.

(Tr. 14).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 23).  At step five, the ALJ denied plaintiff benefits because he

found that there were jobs that exist in significant numbers in the national economy

that plaintiff could perform.  (Tr. 24-25).

> B.    Plaintiff's Claims of Error

Sadler's first argument is essentially a challenge to the ALJ's application of

*Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) in relation to the

RFC assessed.  He says that under the applicable case law and Social Security

Rulings, the ALJ is not bound by a prior disability determination if there is new

and material evidence of a change or worsening of the claimant's condition.  (Dkt.

12, at p. 12).  According to Sadler, there is evidence that his conditions worsened

after the prior ALJ's unfavorable ruling, so the ALJ erred in adopting the prior

RFC.  Specifically, the ALJ found two new severe impairments and MRIs obtained

during the relevant period show joint narrowing in his cervical spine.  (*Id.* at p. 14).

There is also a new finding of crepitus in his joints with decreased range of motion.

(*Id.* at pp. 14-15).

Sadler next argues that the ALJ erred in failing to obtain a medical opinion on equivalency and the RFC determination is not supported by substantial evidence because the ALJ did not properly weigh the opinion evidence.  More particularly, as to the latter point, he challenges the ALJ's weight determination of his treating physician, Dr. Somand's opinion.  According to Sadler, the ALJ did not comply with the treating physician rule, and thus the case should be remanded.  (*Id.* at pp. 20-21).  Lastly, and relatedly, Sadler contends that with the "dismissal" of both of his treating physicians' opinions, as well as the State agency reviewing physicians' opinion, the ALJ had no medical opinion on which to base his RFC determination. (*Id.* at p. 21).

### C.    Commissioner's Motion for Summary Judgment

In response to Sadler's *Drummond* argument, the Commissioner points out that the Sixth Circuit has recently clarified *res judicata* principles in the context of a disability claim.  In *Earley v. Comm'r of Soc. Sec*., 893 F.3d 929, 933 (6th Cir. 2018), the court ruled that an ALJ is not bound by a prior disability decision in a case involving an unadjudicated period, such as this case.  Instead, the ALJ may "take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application," and should give a fresh look to the evidence.  (Dkt. 13, at p. 5-6).  While the ALJ in this case considered the disability claim under the standard

set out in *Drummond*, the Commissioner asserts that the ALJ's analysis nevertheless complies with *Earley* because the ALJ conducted a fresh review of the evidence submitted after the prior ALJ's decision.  And, the Commissioner says that the RFC in this case is supported by substantial evidence, as the evidence does not establish a change in condition that would warrant greater limitations. (*Id.* at p. 7-11).

The Commissioner next asserts that plaintiff's failure to fully develop his argument on equivalence results in waiver, and even if the argument is not waived it fails because changes to the SSR provide that an ALJ is not required to obtain a medical opinion on equivalence if the ALJ does not believe that a plaintiff's impairments reasonably might equal a listing.  As to the ALJ's treatment of Dr. Somand's RFC opinion, the Commissioner says the ALJ properly discounted it because he provided good reasons to give the opinion little weight.  More particularly, the ALJ noted that Dr. Somand provided little to no explanation of the evidence on which he relied in forming his restrictions.  (*Id.* at p. 13).  And, the ALJ permissibly considered the fact that the opinion is not consistent with other evidence in the record.  (*Id.* at pp. 14-17).  Regarding Sadler's argument that the lack of a medical opinion underpinning the RFC renders it unsupported by substantial evidence, the Commissioner points to Sixth Circuit case law holding

that the ALJ is not required to base the RFC on a physician's opinion, and that the RFC is for the ALJ to determine.  (*Id.* at pp. 19-20).

D.     Plaintiff's Reply and Supplemental Briefing

Both parties submitted supplemental briefing with permission of the Court. (Dkts. 16, 17).  The supplemental briefs and Sadler's reply brief further address the propriety of the RFC in light of the ALJ's discounting of all the medical opinions. The Commissioner maintains that the ALJ is not required to base the RFC on a medical opinion under *Rudd*, and that *Gross* is distinguishable.  (Dkt. 16).  Sadler, on the other hand, insists that this case is controlled by *Gross* and that the RFC is not supported by substantial evidence because it is not supported by any medical opinion.  (Dkt. 17).

III.   **DISCUSSION**

A.     Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health*

*& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

        If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

        C.    Analysis and Conclusions

                1.    *Drummond* and *Earley*

        As an initial matter, Sadler's first challenge to the ALJ's decision calls into

question the ALJ's consideration of alleged changes to plaintiff's condition under

*Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).  Generally,

principles of *res judicata* dictate that the administration is bound by a prior

decision in a later case involving the same claimant unless a change of

circumstances is proven on a subsequent application. *Drummond* at 842 (6th Cir. 1997). In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that were previously determined at the administrative level. *Drummond*, 126 F.3d at 842; *see also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."). *Drummond* mandates that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 841.

Suggesting that the case law that has developed under *Drummond* has interpreted the ruling more broadly than it was intended, the Sixth Circuit clarified the reach of *res judicata* principles in *Earley* – and notably with only a passing reference to AR 98-4(6)'s "new and material evidence" requirement. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). In *Earley*, the court stated,

> "Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998). Just so here. Had Earley filed a second application for disability benefits for . . . the same period covered by her first application, the ALJ could have correctly rejected it on res judicata grounds and the principles of finality that it supports. But Earley did not do that. She filed a new application for a new period of time. When an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the

13

>relevant statutes to the contrary.  And res judicata only
>"foreclose[s] successive litigation of the very same
>claim."  *New Hampshire v. Maine*, 532 U.S. 742, 748,
>121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

*Id.* at 933.  Principles of res judicata "do not prevent the agency from giving a

fresh look to a new application containing new evidence or satisfying a new

regulatory threshold that covers a new period of alleged disability while being

mindful of past rulings and the record in prior proceedings."  *Id.* at 931.

Here, the ALJ issued his decision in 2017 with a pre-*Earley* understanding

of *Drummond*, which resulted in his adoption of the prior RFC because the record

did "not document a significant change in the claimant's medical status since the

prior decision was issued." (Tr. 15).  Under *Earley*, since Sadler's current

application for benefits covers a period of time not considered by the prior ALJ,

albeit commencing only one day later, he was not constrained by that ALJ's

assessment in fashioning an RFC for the period at issue.  Thus, his language

suggesting use of a pre-*Earley* rationale for adoption of the RFC raises a yellow

flag.  Yet, despite this early warning sign, the ALJ also indicated that "all of the

new evidence has been considered in evaluating the claimant's residual functional

capacity since the alleged onset date." (*Id.*).  And a thorough review of the ALJ's

decision along with the record before him reveals that the ALJ did indeed conduct

a "fresh look" at the evidence in the record including evidence of Sadler's abilities

and limitations, thus satisfying *Earley*.  Specifically, at step two of the sequential

analysis, in addition to listing plaintiff's other impairments, the ALJ added two severe impairments not included in the earlier ALJ's decision: osteoporosis and osteoarthritis.  Having reviewed the new evidence thoroughly to make his own determination at step two, the ALJ conducted his own review of the evidence of Sadler's back pain.

The same is true for the RFC at step four.  The ALJ discussed all the evidence in the record, ranging in date from 2009 to 2017, much of which came after the prior decision.  Although the decision is framed as adopting the prior RFC because there was no new and material evidence of a change in plaintiff's condition, the ALJ did not simply rely on principles of *res judicata*.  Instead, the ALJ expressly took into account Sadler's daily activities; considered his allegations about his limitations in conjunction with the medical evidence and concluded the two were inconsistent; and determined that the objective evidence did not show significant physical impairment that would limit him beyond the restrictions included in the RFC.  (Tr. 17-22).  The ALJ reviewed treatment records dating back to 2009, and thoroughly discussed the medical evidence from just before the first ALJ's RFC determination through 2017, well after the date last insured – thereby providing new consideration to all evidence of disability.  (Tr. 17-23).  In doing so, the ALJ did not merely review the evidence to determine change in condition; he also looked at the evidence to determine plaintiff's RFC.

15

*See Kamphaus v. Comm'r of Soc. Sec.*, 2018 WL 3800243, at *5 (E.D. Mich. July 23, 2018) (After reviewing the ALJ's discussion of new evidence concerning an impairment in light of *Earley*, the court stated, "It is clear to the Undersigned that ALJ Deming did not simply apply *res judicata* principles and adopt ALJ Kalt's findings 'lock, stock and barrel,' but, instead, gave new consideration and analysis to the June 2013 MRI.").  This is evident in the ALJ's discussions about the medical evidence and about Sadler's abilities.  For instance, after recounting all of the things that plaintiff was able to do: household repairs; chores, including taking out the trash, mowing the lawn and vacuuming; planting flowers; following written and oral instructions well; tinkering with hot rods; and many others, the ALJ concluded, "[t]he activities the claimant was able to engage in are consistent with the RFC set forth by the undersigned above in finding 5."  This statement shows that the ALJ independently found the RFC that he adopted to be suited to Sadler's abilities based on his assessment of all of the evidence in the record.  Because the ALJ gave the evidence a "fresh look," the undersigned finds no error with respect to the mandates of *Drummond* and *Earley*.

      2.    RFC

Sadler insists that the RFC is not supported by substantial evidence because there is no medical opinion supporting the RFC, and an ALJ may not interpret raw medical data to determine functional capacity.  It is true that ALJs, as non-

physicians, are not competent to take raw medical data and extrapolate what a

claimant can and cannot do.  *See Brown v. Comm'r of Soc. Sec.,* 602 Fed. Appx.

328, 331 (6th Cir. 2015) ("[A]n ALJ should resist the temptation to substitute the

ALJ's own interpretation of medical records for that of a physician who has

examined the records."); *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074, at *16

(E.D. Mich. Aug. 19, 2013) ("An ALJ is not qualified to assess a claimant's RFC

on the basis of bare medical findings." (internal quotation marks and citation

omitted)).  But, there is no "brightline rule that medical opinions must be the

building blocks of the RFC."  *Charbonneau v. Comm'r of Soc. Sec.*, 2019 WL

960192, at *17 (E.D. Mich. Jan. 11, 2019), *report and recommendation*

*adopted*, 2019 WL 952736 (E.D. Mich. Feb. 27, 2019).  Moreover, the Sixth

Circuit has been clear that the ALJ does not need to rely on a medical opinion in

formulating the RFC.  *Stokes v. Comm'r of Soc. Sec.*, 769 Fed. Appx. 298 (6th Cir.

2019); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 Fed. Appx. 395, 401 (6th Cir.

2018) ("We have previously rejected the argument that a residual functional

capacity determination cannot be supported by substantial evidence unless a

physician offers an opinion consistent with that of the ALJ."); *Rudd v. Comm'r of*

*Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base

her RFC finding on a physician's opinion, would, in effect, confer upon the

treating source the authority to make the determination or decision about whether

an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." (internal quotation marks and citation omitted)). Indeed, "there are likely instances in which an ALJ can formulate an RFC without the aid of opinion evidence." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017). If the ALJ has properly discounted the opinion evidence, the question becomes whether there was "another basis" for assigning the residual functional capacity. *Id.* at 829; *see also Williams v. Berryhill*, 2019 WL 1274821 (E.D. Mich. Mar. 20, 2019).

In the view of the undersigned, the ALJ did not commit error in his review of the evidence and his formulation of the RFC for two reasons.[2] First, as discussed more fully below, the objective medical evidence is the kind from which functional limitations can readily be extrapolated. And, the objective evidence supports the determination that he could engage in a limited range of light work.

In assessing the substantiality of the evidence supporting the RFC, the undersigned is cognizant of the relevant period: January 14, 2014 (the alleged onset date) to December 31, 2014 (the date last insured). Medical records dated far

---

[2] Though depressive disorder and irritable bowel syndrome were two of Sadler's severe impairments (Tr. 13), his argument on appeal is targeted solely at his physical impairments as they relate to his back, shoulders, and hands. Accordingly, the undersigned's discussion is limited to those physical impairments.

outside that period are less relevant than records from the period at issue and from just before and just after it. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."); *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). Thus, medical records from 2009, 2012, and the latter part of 2015 and beyond are less probative.

On that score, a review of the records from the pertinent period is helpful. On November 4, 2013, Sadler presented to his then-current treating physician, Dr. Somand, complaining of pain in his right elbow area, mostly in the area of the biceps. However, he was not tender in that area. The plan was for him to continue with the same pain medication: Tramadol twice daily. He was in no acute distress at that visit. (Tr. 292). Two days later, Dr. Somand completed a physical RFC questionnaire for Sadler. Dr. Somand's RFC opinion is much more restrictive than the ALJ's RFC. He opined that Sadler would be off task 25% or more during the day, he was incapable of low stress jobs, he could walk only one block without rest or severe pain, he could sit and stand for 15 minutes to one hour at a time, in an eight-hour workday he could sit and stand/walk less than two hours, he would need unscheduled breaks every 15 minutes for 30 minutes, and he could never lift 10, 20, or 50 pounds, among other restrictions. (Tr. 285-86). Both the prior ALJ and

the ALJ in this case gave the opinion little weight.  (Tr. 22, 79).  As discussed below, the ALJ's determination is supported by substantial evidence.  Sadler treated with Dr. Somand once more, on May 19, 2014.  At this visit, he again complained of pain in his right elbow/biceps area, but again showed no tenderness in that area.  He also complained of pain in his neck and shoulders.  The plan was still for him to continue on the Tramadol.  (Tr. 290).  Still, he was in no acute distress.  (Tr. 291).

On June 17, 2014, Sadler presented to Beaumont outpatient clinic for follow-up from a visit in September 2013.  The physician explained that in September 2013, they diagnosed Sadler with myofascial pain and facet arthropathy, and prescribed physical therapy.  Sadler did not attend physical therapy because he did not have insurance at that time.  Since that visit, Sadler said he was experiencing pain every day from his neck down his back, occasionally radiating to the right buttocks, in addition to pain in both knees and elbow pain. On good days, he reported he could walk up to 2 miles.  On a bad day he could only walk household distances.  (Tr. 309).  Despite his complaints of pain, the objective findings were relatively normal.  He was independent in all activities of daily living and he was driving.  He demonstrated no acute distress and his sensation was intact to light touch throughout.  His strength was 5/5 in his deltoids, biceps, triceps, wrist extensors, wrist flexors, "hand intrinsics," hip flexors, knee

extensors, dorsiflexion, "EHL," and plantar flexion.  He had pain at the shoulders with internal and external rotation and abduction past 90 degrees.  Finally, he had negative straight leg raise, negative Patrick's, and negative Spurling's tests.  He was again assessed with myofascial pain secondary to facet arthropathy with no neurologic deficits.  The physician prescribed physical therapy for core strengthening, range of motion, home program, ultrasound, and "heat packets." (Tr. 310).

On August 22, 2014, Sadler began treating with Dr. Shanmukanathan.  He presented on that day with numbness and pain in the third left toe.  The pain and numbness were worse with walking.  He also complained of chronic right shoulder pain and right shoulder labral tear that was surgically repaired in 2009.  After that surgery, he was told he would need a shoulder replacement in about five years, but he was not able to follow-up.  (Tr. 322).  On physical examination, he had full range of motion and strength in his toes.  (Tr. 322).  On musculoskeletal examination, his physician observed no edema, normal pedal pulses, crepitus and decreased range of motion in the right shoulder, but full range of motion in the elbows, wrist, knees, and ankles, minimal crepitus to all joints, and crepitus with passive range of motion in all toes but no pain elicited with movement of the third left toe.  (Tr. 323).

On August 29, 2014, Sadler presented to the hospital with back pain.  He complained of chronic back pain that was gradually getting worse.  His wife found a lump around his lumbar spine the day before.  He said it was difficult to go to sleep because the pain was very severe, though intermittent; he rated it 8-10/10 on the pain scale.  Nothing helped or made it worse.  (Tr. 419).  On physical examination, however, his neck and musculoskeletal system had normal range of motion (Tr. 421) and he had full range of motion of all major joints (Tr. 428).  His motor examination revealed 5/5 strength throughout.  (Tr. 427).  His lumbar spine was tender to palpation and he had a hard nodule on the left side of his spine.  His straight leg raise test was positive.  (Tr. 421).  A physician concluded that Sadler's lumbosacral spine was "unremarkable." (Tr. 423).  Then Sadler underwent an MRI of his lumbar spine.  The MRI showed that the vertebral body heights and alignment were grossly maintained without fracture or subluxation.  He had mild degenerative changes with disc space narrowing and osteophyte formation present.  He also had calcific density adjacent to the left L1 transverse process of uncertain etiology.  (Tr. 422).  Before his discharge, Sadler had a consultation with physical medicine and rehabilitation physician Dr. Ruitta, who reviewed the MRI.  (*See, e.g.*, Tr. 426-27).   Dr. Ruitta recommended "ongoing conservative treatment." (Tr. 425).  Sadler was prescribed prednisone for 5 days and was told to use ice on

his back, to continue with his home pain medications and to follow-up with his

primary care physician.  (Tr. 428).

Sadler saw Dr. Shanmukanathan once more during the relevant period, on

October 27, 2014, for medication refill.  He had not yet scheduled an examination

with an orthopedist for his shoulder issues, but was still complaining of right

shoulder pain.  (Tr. 324).  Objective findings included pain on palpation of the

lower lumbar spine and paraspinous muscles as well as right shoulder pain on

movement and against resistance with crepitus.  (*Id.*).  The plan was for Sadler to

follow-up with pain management for chronic pain control and he was given

Tizanidine for lumbar radiculopathy.  (Tr. 324-25).  Sadler began treating with a

pain management specialist on December 16, 2014.  He complained of moderate to

severe, continuous, sharp and stabbing pain to his neck, lower back, and hands.

(Tr. 407).  Physical examination revealed no acute distress, positive straight leg

raise test on the left, what appears to be impaired flexion and extension of the

lumbar and cervical spine, and an antalgic gait.  (Tr. 408).  From what can be

discerned, Sadler was assessed with lumbar radiculopathy, low back pain,

spondylosis, and spasm, among other things.  (*Id.*).  Sadler underwent EMG testing

on December 30, 2014, the day before the date last insured.  The EMG revealed

low level right L5 radiculopathy and suggestion of left L5 radiculopathy, but with

no evidence of peripheral neuropathy or plexopathy.  (Tr. 403).  After the initial

consultation with pain management, Sadler underwent injections to his cervical spine on December 31, 2014 (Tr. 394), January 14 and 28, 2015 (Tr. 378, 386), and February 11 and 25, 2015 (Tr. 362, 370). He also underwent a caudal epidural steroid injection on March 4, 2015 (Tr. 351). This is the last injection in the record.

Sadler went to the emergency department for epigastric pain on January 26, 2015. Relevant to his musculoskeletal issues here, the "review of systems" indicated no muscle pain, joint pain, weakness, or stiffness, and no motor or sensory deficits. (Tr. 464). On physical examination, he had no clubbing, cyanosis, or edema in his extremities. (Tr. 465). In September 2015, well beyond the date last insured, and thus less pertinent, Dr. Shanmukanathan noted that Sadler complained that his pain was out of control and that his medications were not working. On physical exam, Dr. Shanmukanathan found pain in the lower spine and right shoulder with limited range of motion in the cervical spine. (Tr. 557). To the extent this record demonstrates further limitations than assessed in the RFC, it is too remote from the relevant period. Moreover, in light of the relatively mild findings on examination during the relevant period, it does not appear that this September 2015 record, or any of the treatment notes after it, accurately describe Sadler's functioning during the relevant period in 2014.

The summary above is all the medical evidence from the relevant period, unless otherwise noted.  Even disregarding Dr. Somand's opinion from November 2013, the medical records provide a starting point for the ALJ's RFC determination.  They show that Sadler experienced back, elbow, toe, and shoulder pain with some limitation in the range of motion in his right shoulder.  But, he continued to be independent in all activities of daily living and was still driving. To that end, the ALJ discussed Sadler's daily activities, and concluded that the activities in which he was engaged were consistent with the RFC.  (Tr. 23). Specifically, as noted earlier, Sadler was doing light household chores (including yardwork and vacuuming), planting flowers and pulling weeds, tinkering with hot rods one to two times a month, shopping, going to car shows, and going to drag races with friends.  (*Id.*).  Sadler does not contest the ALJ's determination that his subjective complaints were inconsistent with the medical evidence.

The second reason that the RFC is not erroneous is that, contrary to Sadler's assertion, the ALJ did not discount, or at least not fully, *all* of the opinion evidence.  The ALJ gave partial weight to the State agency reviewing physician's physical RFC opinion that the prior RFC remained applicable to Sadler.  Having given the opinion partial weight, the ALJ partially relied on the opinion, and thus was not left with no medical opinion evidence in support of the RFC.  State agency physician Dr. Kuiper reviewed the medical evidence available to him and provided

an RFC opinion on August 12, 2015. (Tr. 103). Specifically, Dr. Kuiper reviewed the 2009 and 2012 MRIs, the August 2014 emergency department records on his back pain, the August 2014 lumbar spine MRI, reports of pain to Dr. Shanmukanathan, and his pain management treatment, including the injections from December 2014 through March 2015. (Tr. 99-100). Dr. Kuiper concluded, that there was sufficient medical evidence to assess the severity of his physical impairments. In light of that evidence, he adopted the prior RFC for the period under review here. (Tr. 100). Dr. Kuiper crafted an RFC that was consistent with the prior determination and with the medical evidence he reviewed, most of which came from after the prior ALJ's decision. (Tr. 102-03). Thus, although the ALJ gave Dr. Kuiper's opinion only partial weight, it is not accurate to say that the ALJ formed the RFC without the benefit of *any* medical opinion evidence that is consistent with the RFC. Indeed, even though he discounted Dr. Somand's opinion, both Dr. Kuiper's and Dr. Somand's opinions were "still a buoy that kept the ALJ from being totally lost at sea" in determining Sadler's functional capacity. *Williams v. Berryhill*, 2019 WL 1274821, at *4 (E.D. Mich. Mar. 30, 2019). Moreover, the ALJ's discussion of the evidence summarized above demonstrates a logical bridge to the RFC: Sadler's functional capacity was limited by his impairments, but not so limited that he could not work.

In sum, though the ALJ was not bound by the prior RFC, the evidence does not suggest that Sadler was more limited than stated in the prior RFC between January 14, 2014 and December 31, 2014.  The ALJ was not required to obtain a medical opinion for the RFC and this is not an instance in which the RFC is based on the ALJ's own interpretation of raw medical data.  In addition to the diagnostic evidence, the ALJ reviewed the largely normal objective findings that readily can be interpreted by a lay person: normal strength, normal sensation, normal range of motion except his shoulders and sometimes lumbar spine, treatment with conservative modalities, as well as his daily activities some of which are discussed above.  The ALJ reasonably made an RFC finding based on all this evidence.  And, as stated, the ALJ had accepted portions of an expert medical opinion consistent with the RFC.   The RFC is, therefore, supported by substantial evidence.

As noted earlier, this Court may not reverse the Commissioner's decision merely because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of

choice' within which the Commissioner may proceed without interference from the

courts." *Felisky v. Bowen* 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted)

(citing *Mullen*, 800 F.2d at 545).  Here, there is substantial evidence in support of

the ALJ's RFC determination.  Thus, the decision should be affirmed.

       3.      Treating Physician Rule[3]

As stated above, Dr. Somand issued his opinion on November 6, 2013, a

little over two months before the alleged onset date in this case.  Dr. Somand listed

Sadler's diagnoses as lumbago and depressive order, and said his progress was

"not good."  (Tr. 284).  Sadler's symptoms included back pain, neck pain, fatigue,

and dizziness.  He characterized Sadler's pain as severe, multi-level foraminal

narrowing bilaterally at C4-C5 and C6-C7.  The clinical and objective findings

were "right arm pain in elbow area, neck pain, back pain."  Asked to describe

Sadler's treatment, Dr. Somand listed his medications which included Prozac,

Tramadol, Omeprazole, and Flomax.  He opined that Sadler would be off task 25%

or more during the day, he was incapable of even low stress jobs, he could walk

only one block without rest or severe pain, he could sit and stand for 15 minutes to

---

[3] Sadler references the fact that the ALJ also discounted treating physician Dr. Baron's medical opinion.  However, he provides no argument on the weight determination.  Consequently, the undersigned does not address that weight determination.  To the extent Sadler intended to raise such an argument, the argument is waived as it is perfunctory.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

one hour at a time, in an eight-hour workday he could sit and stand/walk less than

two hours, he would need unscheduled breaks every 15 minutes for 30 minutes, he

could never lift 10, 20, or 50 pounds, he could rarely move his head, twist, stoop,

and crouch, and could never climb ladders or stairs.  (Tr. 285-87).

After discussing the objective medical evidence in the record, the ALJ

weighed Dr. Somand's opinion and gave it little weight.  Specifically, the ALJ

said,

> In November 2013, Dr. Michael Somand completed a
> Physical Residual Functional Capacity Questionnaire
> form on behalf of the claimant. (Exhibit BIF) The
> opinions and reports of Dr. Somand contained therein are
> given little weight because 1.) Dr. Somand provided little
> to no explanation of the evidence relied on in forming his
> opinions and reports; and 2.) The record including
> examinations (discussed above), objective testing
> (discussed above), and the claimant's activities (detailed
> below) do not support a significant worsening of the
> claimant's condition since the prior Administrative Law
> Judge's decision at B1A. Therefore, the claimant had the
> ability to perform light exertional level work with
> postural limitations and manipulative limitations through
> his date last insured.

(Tr. 22).

The opinion of a treating physician should be given controlling weight if it

is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic

techniques," and (2) "not inconsistent with the other substantial evidence in [the]

case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion. The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.*; *see also Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c). Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight. *Gayheart* at 376-77.

As an initial matter, the Commissioner is correct that this issue would appear to be precluded by *res judicata*. Dr. Somand's opinion was issued during the prior adjudication, in November 2013, about two months before the alleged onset date. His opinion does not overlap with the relevant dates for this adjudication. The prior ALJ determined that Dr. Somand's opinion was inconsistent with the record as a whole and gave the opinion little weight. (Tr. 79). The principles of *res*

*judicata* as set forth in *Drummond* apply here.  *See Drummond*, 126 F.3d at 842 (Holding that Social Security claimants and the Commissioner are barred from re-litigating issues that were previously determined at the administrative level.).  The issue of the weight to be applied to Dr. Somand's opinion was already administratively determined in the prior case.

In any event, in the view of the undersigned, there is no error in the ALJ's weight determination.  The ALJ cited the supportability of the opinion as a reason for the weight determination.  The regulations state, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion."  20 C.F.R. § 404.1527(c)(3).  The ALJ discounted the opinion in part because Dr. Somand did not fully explain the evidence on which he relied, and the ALJ is correct.  Dr. Somand cited only "multi-level foraminal narrowing bilaterally at C4-C5 and C6-C7" and arm, neck, and back pain.  (Tr. 284).  He did not explain how that objective finding and Sadler's arm, neck, and back pain lead him to conclude, essentially, that Sadler had such extreme limitations.  Dr. Somand also did not identify any other medical evidence that would support his conclusion that Sadler is disabled.  *See Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical

31

findings to support his opinion regarding Price's impairments, the ALJ did not err in discounting his opinion.").

The ALJ's second reason for discounting the opinion—that the record evidence does not support a significant worsening of condition since the prior ALJ's decision—is essentially a conclusion that the opinion is not consistent with the record evidence. That determination is also supported by substantial evidence. As discussed above, the medical evidence from the relevant period shows relatively mild objective findings (such as non-tender elbow, intact strength and sensation, normal range of motion except the shoulders, some tenderness along the spine), conservative treatment with pain medication and injections at the end of the relevant period, and Sadler's daily activities which do not suggest that he is disabled. Notably, the only treatment note from Dr. Somand during the relevant period does not support and is inconsistent with his November 2013 opinion. At the May 2014 visit, Sadler complained of pain in his right elbow/biceps area, and was again not tender in that area. He also complained of pain in his neck and shoulders. The plan was still for him to continue on the Tramadol. (Tr. 290). Still, he was in no acute distress. (Tr. 291). It is not at all clear from this treatment note that Sadler was as functionally limited as Dr. Somand opined. Accordingly, Dr. Somand's opinion is inconsistent with the record evidence. *See Dean v. Comm'r of Soc. Sec.*, 2016 WL 878331, at *2 (E.D. Mich. Mar. 8, 2016) ("Because

Dr. Al-Qasmi's opinion was conclusory and unsupported by his prior treatment notes, the ALJ was free to discount it.") (citing *Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 176 (6th Cir. 2009)).

Having addressed the supportability and consistency of the opinion, the ALJ provided good reasons to discount Dr. Somand's opinion. It is true that the ALJ did not discuss the length, nature, and frequency of the treating relationship. The ALJ's failure in this regard is not grounds for remand. As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.,* 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times." In *Francis*, the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis. *Id.* at 804-05.

Even if the ALJ erred in his consideration of Dr. Somand's opinion, the error is harmless because the ALJ's discussion, in full, provides sufficient explanation and substantial evidence in support of the determination. "Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440

(6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions).

The ALJ discussed the record evidence—from 2009 through 2017. The evidence from the relevant period does not demonstrate that Sadler was more limited than stated in the RFC. The ALJ also discussed the inconsistency of Sadler's daily activities and subjective statements with the objective medical evidence of record. This evidence does not support, and is inconsistent with, Dr. Somand's opinion. The ALJ's discussion of the evidence met the goals of the treating physician rule: "to ensure adequacy of review and to permit the claimant to understand the disposition of his case." The reasons for giving little weight to Dr. Somand's opinion are sufficiently clear and well-supported by substantial evidence.

      4.      Medical Opinion on Equivalence

Sadler cites authority on the need for a medical opinion on equivalence at step three.  (Dkt. 12, at p. 18).  His citations are unavailing for three reasons.  First, there are expert opinions on medical equivalence.  The State agency psychologist, Dr. Harley, expressly considered whether Sadler met or medically equaled Listing 12.04.  (Tr. 100-01).  The State agency medical physician, Dr. Kuiper, assessed the medical evidence and considered Listings 1.02 and 1.04, and concluded that Sadler was not disabled.  In addition, Dr. Kuiper signed the Disability Determination and Transmittal form, which is sufficient evidence to establish that he considered the Listings.  *See Watson v. Comm'r of Soc. Sec.*, 2018 WL 4496650, at *10 (E.D. Mich. Aug. 16, 2018), *report and recommendation adopted*, 2018 WL 4492279 (E.D. Mich. Sept. 19, 2018) ("The physician's signatures on the SSA-831-U5 [disability determination and transmittal] forms are proof that a physician designated by the Secretary has considered whether the claimant's impairments are medically equivalent to an impairment described in the Listings.") (citation omitted).  Second, the Commissioner is correct that at the time this case was decided, the new Social Security Ruling indicated that the ALJ need not obtain evidence from a medical expert on equivalence if the ALJ believes the "evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment."  SSR 17-2p, 2017 WL 3928306, at *4 (SSA Mar. 27, 2017).  Here, the ALJ clearly did not believe the evidence supported a finding that

Sadler met or medically equaled any of the listings. (Tr. 13). Thus, under the new rules, even if there were no opinions on medical equivalence, the ALJ was not required to obtain a medical opinion on equivalence. Third, the issue was merely adverted to without any attempt to "put flesh on its bones," and can be considered waived. *See McPherson*, *supra*.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2019                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge